ALBERS, Appellant, v. SECURITY MUTUAL LIFE INSURANCE COMPANY, Respondent.

(170 N. W. 159).

(File No 4382.   Opinion filed December 31, 1918.)

1.   Insurance—Life Insurance—Premium Note and "Binding Receipt"—Antedated Policy After Insured's Death—Liability—Application, Proviso Re "Binding Receipt"—Rule of Interpretation—Statute.

Where insurance agents duly authorized obtained an application from defendant for insurance on his life, receiving from him his promissory note covering first premium, and issuing to him a so-called "binding receipt," signed by them, for "first annual premium," which provided among other things, that all premiums are payable in cash in advance, and that when notes are taken by the agent as an accommodation to the applicant, any refusal afterward to accept the policy issued by the company * * *, or any tender of the same back to the company or

the agent, shall in no wise release the applicant from liability on said notes;" the application of the insured containing a provision that the company should incur no liability thereunder "until it has been received and approved, and a policy has been issued thereon, nor until the premium has actually been paid to and accepted by the company, * * *, during my life and good health, notwithstanding any recital of such payment in the policy itself; provided, that when the premium has been paid in advance to an authorized agent of the company, and the company's binding receipt has been given by such agent, the liability of the company shall be as stated therein; the policy having been antedated as of date of application and written on the day following the death of insured but without knowledge of that fact; the policy being withheld after learning of insured's death, and the note having been tendered back, plaintiff, insured's widow, having offered to pay the note; held, that there was a contract for present insurance between insured and defendant company, begun on date of the application and in force on date of applicant's death; since, while there are no express words in the "binding receipt" which states there is present insurance, it is presumed the parties intended its terms to be mutually binding; that the receipt should be so interpreted "as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties;" construing Civ. Code, Sec. 1252.

2.   Contracts—Ambiguous   Contracts—Intention,   As   Affected   by
       Acts—Antedating Insurance Policy to Conform to "Binding
       Receipt," Effect.

The intention of parties to ambiguous contracts is sometimes made certain by acts of the parties thereunder.   So held, in construing the effect of a "binding receipt" given by authorized agents of a life insurance company to an applicant, where the company in issuing the policy antedated same to conform to date of the receipt; that if the company did not intend to contract for effective insurance pending date of application and date of issuance of policy, then it would be charging and obtaining full first year's premium while the actual insurance period would be that many days less than one year, which would not be dealing honestly with insured, since by paying premium for one year he is entitled to insurance for that period. Held, further, that issuance of policy and antedating of it to conform to date of application, at a time it was ignorant of applicant's death, amounted to practical construction by it of provisions in the "binding receipt," to the effect that present insurance was thereby intended.

Appeal from Circuit Court, Clay County.   HON. ROBERT B. TRIPP, Judge.

Action by Mabel M. Albers, against the Security Mutual Life Insurance Company, to recover upon a policy of life insurance. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed, and remanded with directions.

*Payne & Olson,* for Appellant.

*Bogue & Bogue,* and *Field, Ricketts & Ricketts,* for Respondent.

(1) To point one of the opinion, re "binding receipt," Appellant cited:

Grier v. Mutual Life Ins. Co., 132 N. C. 542, 44 S. E. 28; Starr v. Mutual Life Ins. Co. of New York, (Wash.) 83 Pac. 116.

Respondent cited:

Robinson v. Union Central Life Ins. Co., 144 Fed. 1010; Paine v. Pacific Mut. Life Ins. Co., 51 Fed. 692; Ross v. N. Y. Life Ins. Co., 32 S. E. 733; Life Ins. Co. v. Stickler, 115 N. E. 691.

(2) To point two, Appellant cited:

9 Cyc, 588; 6 Ruling Case Law, Sec. 241.

GATES, J. In March, 1916, and prior thereto, the defendant company, through its agents Richardson & Sherwood, solicited from one Louie Albers, and on March 3, 1916, obtained from him, an application for insurance on his life. On that day he gave to said agents his promissory note for the amount of the first premium, and said agents issued to him a "binding receipt." On March 6, 1916, he went before the physician named in the "binding receipt" for medical examination and was examined, and the application was forwarded to the home office of defendant and received by it March 13, 1916. On said day the application was referred to the company's medical director, who approved it on March 17, 1916, and on the same day a policy of insurance was written conformable to the application, and said policy was dated March 3, 1916.

Albers died on March 16, 1916, and, the company learning thereof after its writing, the policy was not delivered. The company denied liability and offered to return the promissory note. The plaintiff offered to pay the note. This action was brought by the widow of deceased, the beneficiary named in the application, to recover the amount of insurance. Upon the agreed statement of facts, the trial court made a conclusion of law to the effect that

no contract of insurance existed between said Louie Albers and the defendant company at the time of his death, and rendered judgment dismissing the action. Therefrom plaintiff appealed.

The "binding receipt" was as follows, the same being signed by the agents of the company and the applicant:

"Binding Receipt.

"$39.79.                              Vermillion, S. D., 3, 3, 1916.

"Received of Louis Albers, applicant, thirty-nine and 79-100 dollars, in payment of the first annual premium, in accordance with an application this day made for insurance upon the life of the applicant in the Security Mutual Life Insurance Company, of Lincoln, Nebraska, for the amount of $1,000 on 15-15 D. D. life plan.

"It is hereby agreed that within thirty days from this date the applicant will appear before Dr. E. M. Stansbury or some other physician of the company, for a medical examination, and will be by him examined, and that upon failure to do so within that time, the above payment shall be forfeited. If after such a medical examination the company shall decline the risk, said payment will be returned to the applicant. It is further agreed that all premiums are payable in cash in advance, and that when notes are taken by the agent as an accommodation to the applicant, any refusal afterwards to accept the policy issued by the company under such application, or any tender of the same back to the company or the agent, shall in no wise release the applicant from liability on said notes and that the same must be paid promptly when due, whether the party desires to continue the insurance or not."

Paragraph 4 of the application was as follows, the italics being ours:

"That the company shall incur no liability under this application until it has been received and approved, and a policy has been issued thereon, nor until the premium has actually been paid to and accepted by the company, or its authorized agent, during my life and good health, notwithstanding any recital of such payment in the policy itself; *provided that when the premium has been paid in advance to an authorized agent of the company, and the company's binding receipt has been given by such agent, the liability of the company shall be as stated therein.*"

18—Vol. 41, S. D.

The sole question to be decided is whether there was a contract for present insurance beginning March 3, 1916, and in force on the date of applicant's death.

Appellant concedes that but for the proviso above quoted respondent would not be liable, but argues that, because of the proviso and the terms of the "binding receipt," there was a contract of present insurance.

[1] Respondent cites a number of authorities which hold there was no liability in cases where the applications contained recitals like the above but without the proviso. Of course, such decisions are inapplicable to the question before us. In view of the recital in the proviso that "the liability of the company shall be as stated therein" the question is: May it be fairly inferred from the terms of the "binding receipt" that there was an agreement for present insurance? While there are no express words in the "binding receipt" which state there is present insurance, we must presume that the parties to it intended its terms to be mutually binding. We must so interpret it "as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties." Section 1252, C. C. If, as contended by respondent, such terms show merely an offer to insure on the part of the company, then just as surely such terms show merely an offer to accept insurance on the part of the applicant, and such offer might have been recalled by the applicant and the policy rejected. Joyce, Ins. (2d Ed.) § 66c.

If the "binding receipt" was merely such mutual offer, then there was no consideration for the provision:

"And that upon failure to do so within that time the above payment shall be forfeited."

Nor under such theory was there any binding force in the provision:

"Any refusal afterwards to accept the policy issued by the company under such application or any tender of the same back to the company or the agent shall in no wise relieve the applicant from liability on said notes."

It is only upon the theory of present insurance that the validity of the above clauses can be sustained. Therefore, under the above

rule of interpretation, the parties must have contemplated present insurance.

[2] The intention of parties to ambiguous contracts is also sometimes made certain by the acts of the parties thereunder. In this instance the company caused the policy when written to be antedated to conform to the "binding receipt." If the company did not intend that there should be insurance effective pending the date of the application and the date of the approval of the risk and the issuance of the policy, then the company would be charging and obtaining the full amount of the premium for one year, while the period of actual insurance would be as many days less than one year as there were days intervening between the date of the application and the approval. This would not be dealing honestly with the insured. By the payment of the premium for one year an insured is entitled to insurance for one year.

It seems to us that the issuance of the policy by the company, and the antedating of it to conform to the date of the application, at a time it was ignorant of the death of the applicant, amount to a practical construction by it of the provisions of the "binding receipt" to the effect that present insurance was thereby intended. Such practical construction is entitled to great weight in determining the intention of the insurer. 6 R. C. L. 852.

For both reasons we are of the opinion that the terms of the "binding receipt" bring it within the rule laid down in Joyce on Ins. (2d Ed.) § 64, viz.:

"When properly executed, it protects the applicant for insurance against the contingency of sickness intervening its date and the delivery of the policy, if the application for insurance is accepted, if the latter is not accepted or refused, in the valid exercise by the company of its rights the 'binding' slip ceases eo instanti to have any effect."

See, also, Cooley, Briefs on Ins. p. 535.

No contention being made that the local agents did not have authority to contract for present insurance, we are of the view that at the time of decedent's death his life was insured in the respondent company, under and by virtue of the terms of the "binding receipt."

The judgment appealed from is reversed, and the cause is remanded to the trial court, with directions to enter judgment for

appellant for the amount of such insurance, with interest from the date of the death of the insured, less the amount due on the promissory note for the first premium with interest.