NATIONAL FARMERS UNION PROPERTY & CASUALTY COMPANY, a Corporation, Plaintiff and Respondent,

v.

Ruth MICHAELSON, Adminstratrix of the Estate of Shirley Michaelson, LeRoy Michaelson, J. S. Scott, Aaron Billing, Joseph Mickelson, Leonard L. Christianson, and Francis DuPaul, Defendants,

and

Aaron Billing, Joseph Mickelson, Leonard L. Christianson, and Francis DuPaul, Defendants and Appellants.

No. 7957.

Supreme Court of North Dakota.

Aug. 24, 1961.

432

Ilvedson, Pringle, Herigstad & Meschke, Minot, for appellants Aaron Billing and Joseph Mickelson.

Palda, Palda, Peterson & Anderson, Minot, for appellant Leonard L. Christianson.

Bosard, McCutcheon & Coyne, Minot, for appellant Francis DuPaul.

Mackenzie & Jungroth, Jamestown, for plaintiff-respondent.

Dale Jensen, Asst. Atty. Gen., for Unsatisfied Judgment Fund of North Dakota.

STRUTZ, Judge.

This is an appeal from a judgment for the plaintiff in a declaratory judgment action brought by the National Farmers Union Property and Casualty Company, hereinafter referred to as the "company," against the administratrix of the estate of Shirley Michaelson, and others, to establish that an application for liability insurance made by the said Shirley Michaelson through Ruth Michaelson, her mother, acting as her agent, never was approved by the company and that no contract of lia-

bility insurance ever became effective by reason of such application. The defendants in such action, including the appellants herein, in their answers contended: (1) that there was a policy of liability insurance in force at the time of the injuries for which the appellants claim damages because the agent of the company bound coverage from the date of the application; (2) that there was a policy of insurance in force by reason of the failure of the company to act on the application made on behalf of Shirley Michaelson, deceased, within a reasonable time; (3) that even though there was no policy of insurance in force at the time of the injuries for which the defendants have claims, the company is liable, nevertheless, because it undertook to defend certain actions brought by claimants against the estate of Shirley Michaelson without first entering into a nonwaiver agreement, reserving any rights it might have; and (4) if there was a policy of liability insurance in force, or if the company has waived its rights and is estopped from denying coverage because it participated in the defense of actions against the estate of the applicant without reservation of its rights, that the claimants, as judgment creditors against the estate of the deceased, are entitled to assert every claim against the company which the deceased herself might have asserted.

From a judgment of the trial court for the insurance company and against the claimants, appeal was taken to this court.

The facts necessary to a determination of the questions before us are these:

On October 8, 1958, an application for automobile liability insurance was made to the respondent company on behalf of one Shirley Michaelson by her mother, Ruth Michaelson. This application was made through Tony Swedlund, of Velva, North Dakota, an agent of the company. The agent prepared the application in writing and, among other things, included therein the following provisions:

| Policy Period: (if application is submitted on approval, omit policy period.) | From: 10 9 58 Mo. Day Yr. | To: 12:01 A. M. . 4 9 58 (sic) Mo. Day Yr. |

Also in such application there appeared this statement:

On Approval

I understand that no insurance is bound hereunder and agree that no insurance shall become effective until this application is approved by the Company.

| 10–8–58 Date | (Signed) Shirley Michaelson Applicant's Signature R.M. |
| 10–8–58 Date | (Signed) Tony Swedlund Agent's Signature |

Ruth Michaelson, who made the application on behalf of her daughter, Shirley, at the time of making application delivered to the agent a check for the six-months premium for such insurance.

The application, the premium check, and a forwarding letter were air-mailed to the home office of the company in Denver on October 9, the day after the application was dated. It appears from the record that the

application was not received by the company until October 14. In the letter accompanying the application the agent advised the company that the person on whose behalf the application was being submitted, Shirley Michaelson, recently had had her liability policy in another company canceled. The agent expressed the opinion that the cancellation of her policy did not reflect upon the applicant's ability as a driver, and requested the company to send a night message approving or rejecting the application. The company failed to send such night letter either of approval or rejection of the application. Instead, it mailed a so-called "Speed-Memo" by ordinary mail on the day following receipt of the application and the letter from the agent. In the "Speed-Memo" the company advised the agent that it would be impossible to give confirmation of coverage before an investigation of the risk, which investigation it estimated would require two or three weeks. The agent was further advised that, if immediate coverage was desired by the applicant, the applicant's check would be returned by the company. The check never was cashed.

Within five days of the receipt of the application and the letter from its agent by the company, and before the investigation was completed, to wit, on October 19, the applicant, Shirley Michaelson, was involved in a highway collision in which she and six occupants of the two cars involved were killed. After learning of such collision from its agent, and without completing the investigation of the applicant, the company, on October 21, rejected the application and returned the premium check.

The respondent company carried a policy of insurance on the other vehicle involved in the collision in which the applicant was involved, such policy providing protection against uninsured motorists. It provided a maximum accident coverage of $5,000 for loss of life caused by an uninsured operator of a motor vehicle. In negotiating settlement with the appellants under this policy, the company failed to inform the appellants that it had had under consideration, at the time of the collision, an application from Shirley Michaelson, the deceased, which application showed liability coverage for the period during which the accident occurred. Settlement was made with the appellants under the policy covering the occupants of the other vehicle involved in the collision, which policy insured against injury or death caused by an uninsured motorist, without disclosing the fact that application for liability coverage had been made on behalf of the said Shirley Michaelson.

When the appellants discovered that such application for insurance coverage for Shirley Michaelson had been pending at the time of the accident, they commenced actions against the estate of the applicant. The attorney for the administratrix interposed an answer in each of such actions on behalf of the estate, and the company, after considerable correspondence with such attorney, decided to participate in the defense of these actions and agreed to reimburse him for interposing answers and for motions for change of venue. Somewhat later, attorneys for the company moved for a continuance in each of the actions against the estate. These appearances were made by the company without any reservation of its rights to contest any coverage by reason of the filing of the application for insurance on behalf of Shirley Michaelson. The cases commenced by the claimants against the estate resulted in judgments of $9,000 each. Thereafter, this action was brought by the company for a declaratory judgment to determine what, if any, liability the company had to the claimants and judgment creditors of Shirley Michaelson arising out of the filing of the application for insurance on her behalf.

The claimants advanced several grounds on which they based their claims against the company:

1. That the agent of the company bound coverage from the date of the application;

2. That the company, by its delay in acting upon the application of Shirley Michaelson for insurance and its failure to reject the application promptly, is liable for the loss to the same extent as if the application for insurance had been approved and the insurance policy issued; and

3. That the company, by participating in the defense of the actions against the estate of the applicant without reservation of its rights, waived its right to deny coverage and is estopped to deny its liability.

The appellants contend that they, as judgment creditors of the estate of Shirley Michaelson, which estate is insolvent, are entitled to assert against the company every claim which Shirley Michaelson herself might have asserted against the company if she were living.

We will consider the contentions of the appellants in the order listed.

We first consider the question of whether the agent for the company bound coverage from the date of the application. Under North Dakota law, any person who solicits insurance on behalf of any company, transmits any application for policies of insurance other than for himself, collects any premium for insurance, or aids or assists in doing any of these things, shall be regarded as the agent of the insurance company unless it can be shown that he receives no compensation for such services. Sec. 26-07-02, N.D.C.C.

■ Therefore, the agent who took the application for liability insurance made on behalf of Shirley Michaelson was the agent for the respondent company, and not the agent of Shirley Michaelson or of Ruth Michaelson, her mother. Stearns v. Merchants' Life & Casualty Co., 38 N.D. 524, 165 N.W. 568; Fargo National Bank v. Agricultural Ins. Co., 8 Cir., 184 F.2d 676.

■ Under North Dakota law, there is apparent authority in an agent to bind the insurer unless the insured has notice of limitation of the agent's authority. Thus the agent of the company had the apparent authority to bind the company by coverage, and our inquiry is whether he in fact did so.

■■ As affects an insurer, the law of principal and agent must be liberally interpreted in favor of the insured, and the insurer is bound by acts of its agent not only within the scope of his actual authority but within the scope of his apparent authority. In preparing the application, did the agent of the company, by his acts and conduct, bind coverage in this case? We do not believe the facts support the contention of the appellants that he did so. It is true that the application shows the period of coverage for the policy applied for was to be October 8, 1958, and for a period of six months thereafter. The agent also accepted a check from Ruth Michaelson for the premium for such six-months period. As part of the same application, however, Ruth Michaelson, who made the application for her daughter, signed a statement in which she specificly stated that she understood that no insurance was to be effective until after the application had been approved by the company. That she fully understood this to be the fact is further borne out by her testimony to the effect that she understood the application was on approval, and that she understood that Shirley would not be covered until the application had been approved and the policy issued.

With regard to the payment of the premium for the six-months period by giving the agent a check, we further point out that the applicant could not have been misled thereby for she testified, with reference to the giving of the check:

"That was my suggestion to send the check along. I thought perhaps it would help get the application, get things moving faster, so I suggested I would send a check and he said that would be all right."

We are of the opinion that the facts do not sustain the contention that the agent

bound coverage from the time of the application.

The next contention of the appellants is that the company, by its delay in acting upon the application and by its failure to reject the application promptly, is liable for the loss and injuries suffered by the appellants to the same extent it would be if the application for insurance had been approved and the policy issued.

■ The question of liability of an insurance company for loss occurring before the application is approved and the policy issued has been before the courts on many occasions. Generally speaking, an insurance policy is regarded as an ordinary contract, and the ordinary rules of contract are applied to it. There is an offer in the form of the application and an acceptance of that offer in the form of the approval of the application and the issuance of the policy.

There is a conflict of authority, however, as to whether legal obligations arise in all cases only after a contract of insurance has been entered into or whether, under certain circumstances, a legal duty arises from the relationships created during the negotiations between the applicant and the insurance company. Those courts which adopt the former view hold that, until a contract has been entered into, there is no legal obligation on the part of the company to the applicant and that the legal relationship between the parties is contractual.

In those cases where the courts have held the company liable even though the application has not been approved and no policy has been issued, the decisions are based on one of the following grounds:

1. Because of oral agreement or representations made by the agent; and

2. On the ground that the insurance company becomes liable in tort for negligence where it has failed to reject or act upon the application with reasonable promptness.

In this case, the appellants contend that the company is liable on a third ground, claiming that it is estopped to deny liability by reason of its conduct in defending suits against the applicant's estate without reserving its rights, and that this is true even though the application never was approved.

■ We find no evidence in the record on which it can be argued that the agent made oral representations or orally agreed to cover the application from the time the application was made. As we have pointed out, all of the evidence is to the contrary. The agent carefully explained to the applicant that there would be no insurance until the application was approved by the company. Ruth Michaelson, who made application on behalf of her daughter, testified that she fully understood this to be the case. There can be no insurance in effect based on representations or oral agreement of the agent, because the record in this case discloses no such representations or oral agreement upon which a claim for such insurance could be based.

■■ We then consider whether there is evidence of certain circumstances in the record that would give rise to a legal obligation on the part of the insurance company from the relationship created by the negotiations between the applicant and the company. The company was under obligation to act upon the application promptly and to advise the applicant that her offer was accepted or was rejected. The appellants cite the decision of this court in the case of Bekken v. Equitable Life Assurance Society of the United States, 70 N.D. 122, 293 N.W. 200. In that case, Bekken made application for life insurance on June 1, 1934, designating his wife as beneficiary. He was killed in an automobile accident on June 26, without any fault on his part. At the time of his death, the insurance company had not acted upon his application for insurance. In an action against the company by the widow of the applicant, the jury found that there had been negligent delay on the part of the company in acting

upon the application, and this court, on appeal, held that the question of whether there was negligent delay on the part of the company, under the circumstances, was a question of fact for the jury and that the evidence was sufficient to sustain the verdict for the plaintiff. The question of whether there has been negligent delay on the part of the insurer becomes a question of law only where the facts are such that reasonable men can draw but one conclusion from them.

The Bekken case clearly can be distinguished from the case here under consideration. In this case, the applicant was plainly told that there would be no insurance in force until the company approved the application and issued the policy; on this there can be no question. In the Bekken case, a receipt was given to the applicant to the effect that the insurance would take effect on June 1, the date of the application, provided the applicant was, on that date an insurable risk under its rules and the application was otherwise acceptable. The evidence disclosed that, on that date, the applicant was in good health and was an insurable risk. The evidence in the Bekken case further showed that the agent of the company admitted that he had advised the applicant that, since he recently had had a policy of insurance approved by the same company, which policy had lapsed for nonpayment of premium, there probably wasn't any change in his condition and that he very probably would get his insurance.

Further, in the Bekken case, twenty-six days passed from the date of application to the date of death of the applicant; in the present case, only eleven days elapsed from the date of application to the date of death, and only four days elapsed from the time of receipt of the application by the company to the date of death of the applicant.

In addition, the application in this case was taken with the express understanding of all of the parties that no insurance was to be in force until the application had been approved. We do not believe the insurance company was guilty of such unreasonable delay that it is liable in tort for negligent delay. We believe the present case clearly can be distinguished from the Bekken case, where the applicant was led by the agent to believe that he was covered.

Finally, the appellants contend that the company, by participating in the defense of the actions against the estate of the applicant without reservation of rights, waived any defense which it had to coverage and that the company is estopped to deny coverage. We do not believe, in a case where the deceased applicant had no insurance coverage at the time of the accident resulting in the injuries for which the appellants have brought their actions, as is true here, that the company, by undertaking to assist in the defense of such uninsured person or her estate, by such action in effect created a policy, thus enabling the judgment creditors of the applicant's estate to recover from the insurance company. We agree with the general proposition advanced by the appellants that when an insurance company, after knowledge of a breach of any of the conditions of a policy upon which it might have defended, nevertheless takes a chance in the hope of winning, and defends its insured without reservation, it thereby waives the breach of the condition and will not be allowed thereafter to either abandon the defense of the assured or to disclaim liability to the assured. The action of an insurance company in defending its insured without reservation of rights amounts, in effect, to a recognition on its part of its liability under the policy. But where there is no policy of insurance in effect, as was true in this case, such action would not and did not operate to create a policy which theretofore was nonexistent, thus enabling judgment creditors of the estate of Shirley Michaelson to recover from the company.

Ordinarily, the doctrines of waiver and estoppel will not operate to create a contract that never existed.

Since we hold that no policy of insurance was in force at the time of the injuries of which appellants complain, and that the respondent company is not liable on any theory for any of the injuries caused by the negligent operation of her motor vehicle by Shirley Michaelson during her lifetime, the question of whether the appellants, as judgment creditors of the insolvent deceased, are entitled to assert their claims against the respondent need not be determined. The claims of the appellants against the respondent can be no greater than could be the claim of the applicant if she were living.

For reasons set forth, the judgment of the trial court is affirmed.

SATHRE, C. J., and STRUTZ, MORRIS, BURKE and TEIGEN, JJ., concur.