Myris A. DAMM, Plaintiff and Respondent,

v.

**NATIONAL INSURANCE COMPANY OF AMERICA, Defendant and Appellant.**

No. 8767.

Supreme Court of North Dakota.

July 28, 1972.

Opinion Modified and Rehearing Denied
Sept. 20, 1972.

Robert A. Alphson, Grand Forks, for defendant-appellant.

Rolfstad, Winkjer, Suess, McKennett & Kaiser, Williston, for plaintiff-respondent.

DOUGLAS B. HEEN, District Judge.

The defendant insurance company appeals, asking trial de novo from a judgment of the district court finding it liable for damages for unreasonable delay in acting upon an application for life insurance. The action was commenced by the applicant's surviving wife, and the trial court, hearing the case without a jury, awarded damages in the face amount of the life insurance policy for which application had been made.

On July 25, 1967, Herbert Damm made application for a five-year level term insurance policy with the defendant insurance company. The insurance was solicited by the defendant's agent, Harris Hollen, who assisted Mr. Damm in filling in the application. Myris A. Damm, the applicant's wife and the plaintiff in this case, was designated as the primary beneficiary in the insurance application, the purpose of the desired insurance being in part to cover a house mortgage debt and an unpaid chattel mortgage balance on a truck and trailer.

The application provided that if the full first premium "is paid on the date of this application . . . then the liability of the Company shall be as stated in the receipt." Mr. Damm paid a quarterly premium, a full first premium under the terms of the application, and was given a "Binding Receipt," the terms of which he accepted by the express language of the application. The receipt provided that insurance coverage would be effective as of the date of the receipt, which was July 25, 1967, or on the date of completion of the medical

examination, if required, whichever was later, if the defendant company found that the applicant was an insurable risk.

On July 31, 1967, the defendant company acknowledged receipt of the insurance application and Mr. Damm's payment of the first premium. The premium payment was deposited in a suspense account and the agent was advanced part of his commission, with the balance payable upon issuance of the policy.

At the time of the application a medical examination form prepared by the defendant company was given by Mr. Hollen to the applicant for his use in connection with the physical examination. At no time did the defendant insurance company directly communicate to Mr. Damm that he must furnish proof of a satisfactory medical examination before the insurance coverage would be in effect. Instead, this function —and the evidence is far from satisfactory on this point—was performed by its agent, Mr. Hollen.

Mr. Damm did not submit any medical information to the defendant company in connection with his application for insurance, nor did he undergo a physical examination for this purpose. The insurance policy was never issued by the defendant, nor did the defendant take any other action on the application. On January 10, 1968, Mr. Damm was killed in a trucking accident.

On January 23, 1968, upon learning of the applicant's death, the defendant company wrote, addressing its letter to Herbert Damm, saying that his application had been filed in a "Not Complete" file because of non-receipt of his medical examination and offering to reconsider his application upon receiving the requested medical information. This letter attempted a refund of the applicant's initial premium payment by an enclosed check of the same date, payable to Herbert Damm.

Two causes of action are set forth in the plaintiff's amended complaint, the first of which is based on contract and the second on tort.

In denying recovery under the first cause of action, the district court held that the defendant company was not liable in contract, because the applicant failed to furnish medical information required by the defendant under the application, so that a contract of insurance was not effected. Judgment, however, was awarded the plaintiff on her second cause of action in tort, the trial court holding that the defendant negligently delayed in action upon Mr. Damm's insurance application, he having been led to believe that the insurance was in force.

■ In appealing the decision of the trial court, the defendant asks trial de novo.

This appeal, taken before the effective repeal date of the North Dakota trial de novo statute, is to be decided under de novo appellate law and procedure [Steele v. Steele, 189 N.W.2d 660 (N.D.1971)]; and all issues of the case are reviewable on appeal. Steele v. Steele, *supra*; Knauss v. Miles Homes, Inc., 173 N.W.2d 896 (N.D. 1970); Patterson Land Co. v. Lynn, 44 N. D. 251, 175 N.W. 211 (1919).

We affirm.

As earlier noted, the applicant, Herbert Damm, upon paying the initial premium was given a "Binding Receipt," which by its terms set forth the condition that insurance coverage would be effective from the date of the application or as of the date of the medical examination, if required, whichever was later, provided the defendant accepted the risk. The legal effect and consequence of the conditional receipt here in question is the first and basic issue to be considered. An extensive collation dealing with conditional receipts appears in 2 A.L. R.2d, at 943.

A conditional receipt similar to that presently before the court was considered in Prudential Ins. Co. of America v. Lamme, 83 Nev. 146, 425 P.2d 346 (1967).

There the conditional receipt provided that insurance coverage would be effective as of a specified date, provided the company was satisfied that on such date the applicant was an insurable risk under the company's underwriting rules. There, as here, the applicant paid the first premium on the life insurance policy and was given a conditional receipt. The policy was never issued, because the applicant did not appear for a physical examination. Seven weeks after making application, the applicant died. In holding the defendant company liable, the Nevada Supreme Court stated:

> [T]he conditional receipt created a temporary contract of insurance subject to a condition—rejection of Richard Lamme's application by the insurance company. Since rejection did not occur prior to his death, the company is liable.

> Prudential Ins. Co. v. Lamme, *supra,* at 348.

Accord: Albers v. Security Mut. Life Ins. Co., 41 S.D. 270, 170 N.W. 159 (1918).

But see: Thorne v. Aetna Life Ins. Co., 286 F.Supp. 620 (N.D.Ind.1968).

Paulk v. State Mut. Life Ins. Co., 85 Ga.App. 413, 69 S.E.2d 777 (1952), later a much cited authority, was concerned with a conditional receipt which provided that upon payment of the initial premium and if the applicant was an acceptable risk, life insurance would be effective as of the date of the application or of the medical examination, whichever was later. *Paulk* held that such a conditional receipt did not give rise to interim insurance prior to the medical examination and company approval of the applicant as an acceptable risk.

In 1967 the Georgia court again considered the legal consequences and effect of the conditional receipt, and in Etheridge v. Woodmen of World Life Ins. Soc'y, 114 Ga.App. 807, 152 S.E.2d 773 (1966), cert. granted 1967, after extensive review of authorities, expressly overruled *Paulk.* In *Etheridge* the court adopted what it termed the modern view that a conditional receipt purporting to effect immediate coverage if the insurer approves the application or is satisfied as to the applicant's insurability results in a binding contract for interim insurance prior to the insurer's approval of the application or determination of insurability, stating:

> The condition stated in the receipt is construed to be a condition subsequent rather than a condition precedent. Since the condition is a condition subsequent, the insurance company has the burden of showing by proper pleading and proof that the applicant was not an insurable risk. To carry its burden and escape liability, the company must show that at the time the conditional coverage commenced the applicant was in fact not an insurable risk by any reasonable standard in relation to the coverage applied for. . . .

> In paying his money in advance and accepting the binder in return, the applicant is not thereby offering to be insured, because his application does this for him regardless of whether he pays a premium in advance. Thus, the binder is issued for a separate consideration, not as a necessary part of the application. In cases of this kind there are two severable offers: (1) an offer by the applicant to purchase a policy of life insurance and (2) an offer by the company to provide interim insurance pending the company's consideration of the applicant's prior offer. The latter offer is accepted by the applicant by advance payment of the initial premium on the policy applied for. The application and receipt together constitute a contract as soon as the application is submitted, the premium paid and the conditional receipt issued. . . .

> Etheridge v. Woodmen of World Life Ins. Soc'y, *supra,* at 775.

■■ Being of the opinion that *Etheridge* states the better rule, we hold that the conditional receipt here resulted in a present or interim contract of insurance

subject to a condition subsequent, namely, that Mr. Damm at the time such conditional coverage commenced was not an insurable risk by any reasonable standard in relation to the coverage for which application had been made. To avoid liability under such conditional insurance coverage, and again in accord with the reasoning of *Etheridge*, it was incumbent upon the defendant to prove the existence of such a condition subsequent. Not having rejected the application prior to the death of the applicant nor having proved at trial that at the commencement of the interim or conditional coverage Mr. Damm was an uninsurable risk, the defendant company in this case is liable to the beneficiary for the face value of the policy.

A common objection to the construction whereby a conditional receipt gives rise to interim or temporary insurance is that present insurance coverage is afforded one who in fact is not an insurable risk. That such a contingency may be avoided is demonstrated by National Farmers Union Property & Cas. Co. v. Michaelson, 110 N.W.2d 431 (N.D.1961), the application in that case specifically providing that no insurance was bound under the application and the applicant expressly agreeing that no insurance would be effective until the application was approved by the company. *Prudential* also dealt with the legal consequence whereby a conditional receipt temporarily may insure the uninsurable, the court sweeping this argument aside on the ground of broad public policy, noting that insurance companies could choose to assume the risk sometimes involved in the use of conditional receipts or could write "COD" insurance, the court explaining the term *"COD" insurance* as follows:

Absent a contrary agreement (the conditional receipt, for example) payment of the initial premium and delivery of the policy are usually concurrent acts, thereby creating a period between the signing of the application by the applicant and the delivery of the policy during which no money has been advanced to the insurance company, and no insurance is in effect. This is called "COD", or "cash on delivery" insurance.

Prudential Ins. Co. of America v. Lamme, *supra*, Footnote 4, 425 P.2d at 348.

In this case, the plaintiff properly was entitled to judgment, but, as this court said in Heinzeroth v. Bentz, 116 N.W.2d 611, 616 (N.D.1962), for reasons not entirely valid. A judgment will not be reversed merely because it rests on inapplicable reasons.

What has been said is decisive of this case, and other issues not controlling of the case will not be considered. The judgment of the district court is affirmed.

The cases of Mann v. Policyholders' Nat'l Life Ins. Co., 78 N.D. 724, 51 N.W.2d 853 (1952), and Bekken v. Equitable Life Assur. Soc'y of United States, 70 N.D. 122, 293 N.W. 200 (1940), are not decisive of the instant action. Both *Mann* and *Bekken* were concerned with an insurer's negligence, and any language in those cases discussing contractual matters is purely dictum.

For the reasons stated, the judgment of the district court is affirmed.

ERICKSTAD and KNUDSON, JJ., concur.

WM. L. PAULSON, deeming himself disqualified, did not participate; DOUGLAS B. HEEN, District Judge of the Second Judicial District, sitting in his stead.

TEIGEN, Judge (dissenting).

I dissent. The majority have adopted the rule set forth in Etheridge v. Woodmen of World Life Ins. Society, 114 Ga. App. 807, 152 S.E.2d 773 (1966). *Etheridge,* however, does not square with our case on the facts. The binding receipt in *Etheridge* stated:

"In consideration of the payment made by the applicant and of the statements in

the application, the society agrees that the benefits applied for *shall be in effect from the date of the completion of the application*, if the applicant is insurable for the amount and plan applied for as a standard risk under the rules and practices of selection of the Society. If the applicant is not insurable as a standard risk on the date the application is completed, this agreement shall be void from its inception." [Emphasis added.]

The binding receipt in the instant case provides:

"This insurance under the policy for which application is made *shall be effective* on the date of this receipt or the *date of completion of the medical examination* (if required) whichever is the later date if, in the opinion of the authorized Officer of the Company at its Home Office in Grand Forks, North Dakota, the Proposed Insured is insurable and acceptable for insurance. * * *

"If the Company declines to issue a policy or issues a policy other than the policy for which application is made, the Company shall incur no liability hereunder except to return by its check the above payment upon surrender of this receipt." [Emphasis added.]

There is no question raised and it was fully understood that the insurance applied for required a medical examination. In my opinion the receipt is not ambiguous, under the policy applied for, and certainly did not encourage deception, as was found by the Nevada Supreme Court in Prudential Insurance Company of America v. Lamme, 83 Nev. 146, 425 P.2d 346 (1967), also cited and relied upon by the majority.

Further, the receipt in this case does not provide, as did the receipt in Albers v. Security Mut. Life Ins. Co., 41 S.D. 270, 170 N.W. 159 (1918), also cited by the majority, that if the applicant was found acceptable the insurance was to be dated back to the date of the receipt and not to the date of the medical examination. In this case it is perfectly clear that the policy, if and when issued, would be dated back to the date of the medical examination. This fact is clearly stated in the receipt. The applicant failed to get the necessary medical examination, although he was fully cognizant of the requirement and, in fact, had been prodded by the defendant's agent on several occasions to undergo the required medical examination but failed to do so.

I dissent for another reason.

If the insurance became effective on the date of the receipt, as the majority hold, then the policy had lapsed before Damm died. He paid only a quarterly premium (three months). The statutes in this state providing the forms for various types of life insurance policies uniformly provide that the premium shall be payable in advance and that the payment of the premium, or installment, shall not maintain the policy in force beyond the date when the next premium, or installment, is payable, except that a grace period of one month is granted for the payment of every premium after the first premium, during which month the insurance shall remain in force. Sections 26–03–26, 26–03–27, 26–03–29, and 26–03–30, N.D.C.C.

The application in this case calls for a five-year term policy. The standard term policy in North Dakota is provided for by Section 26–03–30, N.D.C.C., and provides, in part, as follows:

"Except as herein provided, the payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable. All premiums are payable in advance at said home office, or to an agent of the company upon delivery of a receipt signed by one or more of the following officers of the company: (insert titles of officers who may sign receipts) and countersigned by said agent.

"A grace of one month subject to an interest charge at the rate of _____

percent per annum shall be granted for the payment of every premium after the first, during which month the insurance shall continue in force. If the insured shall die during the month of grace, the overdue premium will be deducted from any amount payable hereon in any settlement hereunder."

In this case five and one-half months passed after the date of the delivery of the receipt for the quarterly premium before Damm died. Therefore, if, as the majority say, the policy became effective on the date of the receipt, the quarterly premium would have kept the policy in force, at the most, for a period of four months and, under its terms, the policy had lapsed and terminated one and one-half months prior to Damm's death.

In *Etheridge* the applicant paid the first premium and died within five days after making application. In *Lamme* the applicant paid a quarterly premium and died within seven weeks after making application. In *Albers* the first premium was paid by note and the applicant died thirteen days after the application, which was three days after he had taken the required medical examination. Thus death in each of the cases cited by the majority occurred within the period for which the premium had been paid.

As I see it in this case, if the insurance became effective on the date of the binding receipt such insurance had lapsed before Damm died and, if the insurance, under the terms of the receipt, was not to become effective until he had taken the medical examination it never became effective because no physical examination was taken. Thus whatever horn of the dilemma one chooses there was, in my opinion, no insurance in effect at the time of Damm's death.

STRUTZ, C. J., concurs in the above dissent.

## ON PETITION FOR REHEARING

DOUGLAS B. HEEN, District Judge.

■ Urging reconsideration of the issues of this case, the defendant insurance company has petitioned, asking a rehearing. In so petitioning, the defendant has adopted the several conclusions of the dissenting opinion, one of which is that the applicant, Mr. Damm, "fully understood" or was "fully cognizant" that insurance was not to be effective until he furnished a satisfactory medical examination and was accepted as a risk by the defendant company; and that since such required medical information was not furnished by the applicant, there was no interim or temporary insurance coverage from the date of the completed application.

Retaining allegiance to the line of decisions discarded by Etheridge v. Woodmen of World Life Ins. Soc'y, 114 Ga.App. 807, 152 S.E.2d 773 (1966), cert. granted 1967, and other cases of like import expressing the modern view, the dissent, despite prepayment of a premium at the time of completion of the application, would hold that there was no insurance coverage whatsoever until a later date, when the applicant furnished required medical information and was stamped an acceptable risk by the defendant company. Justification of this conclusion is attempted by a comparison of conditional receipts, a field which yields with reluctance, if at all, to comparative analysis, other than generalized and arbitrary classification.

In stating that *Etheridge* does not square with the case at hand on the facts, the dissent compared the conditional receipt in *Etheridge* with that of this case. Paulk v. State Mut. Life Ins. Co., 85 Ga.App. 413, 69 S.E.2d 777 (1952), denied that interim insurance was effected from the time of application under a conditional receipt which provided that "the insurance shall be effective as of the date of the application or of the medical examination, whichever is later." The receipt in *Paulk*, for all practical purposes, is almost identical with that

of this case. *Etheridge*, under the somewhat different conditional receipt, specifically overruled *Paulk* and held interim insurance to be in effect from the date of the application. It is evident under *Etheridge* that temporary insurance under a conditional receipt similar in terms to that of this case would commence at the time the application was completed rather than as of the date the applicant furnished required medical information; and the attempted comparison of differing conditional receipts lends little, if any, assistance to the dissent, or to the defendant, in this case.

The dissent, however, predicates its decision that there was no insurance coverage in this case on the assertion that Mr. Damm, as stated, "fully understood" that he was required to furnish medical information and, having failed to do so, was uninsured.

Additional facts in this case deemed unnecessary in arriving at the majority opinion assume apparent added significance in the wake of the factor of "knowledge", as such is raised by the dissent. Briefly, at the time of making application, the defendant's soliciting agent had Mr. Damm complete Part Two of the application form furnished by the defendant. Part Two was to be completed if the desired insurance was to issue without a medical examination. To emphasize this, the application in bold lettering set forth that, "If non-medical case—all answers must be completed." With the direct assistance, guidance, and encouragement of the defendant's agent, Mr. Damm answered all questions contained in Part Two, which, of course, was a part of the application signed by the applicant.

██ Mr. Damm's completion of Part Two of the application, at the instance of the defendant's agent, demonstrates that the agent then at the very least was unaware and did not understand that a report of medical examination of the applicant was required before there could be insurance coverage. Since the agent did not have this knowledge, it cannot be inferred that Mr. Damm did. The defendant company,

admitting that at no time nor in any manner did it deal directly with Mr. Damm, but to avoid the impact of these facts, contends that its agent later orally informed Mr. Damm of the necessity of his physical examination. The method and means of such notification were left to the defendant's agent, and his efforts in this direction, disclosed solely by his testimony, are characterized at best as casual, contradictory, and uncorroborated and, in our judgment, do not warrant the conclusion reached by the dissent that the applicant "fully understood" that there would be no insurance coverage until the applicant furnished a report of his physical condition to the defendant company and was accepted by the latter as a risk.

Interim insurance arising by advance payment of an insurance premium and issuance of a binding conditional receipt should not be defeated by vague oral communications, the only documentation of which would lead the applicant, Mr. Damm in this instance, to believe that insurance coverage existed without a medical examination. The divergent views developed in these opinions are illustrative, we believe, of the desirability that the legal relationship between an applicant and an insurer should be fixed and determined, not from the supposed knowledge of an applicant since deceased, but rather as a settled incident springing from the insurer's issuance of a conditional receipt upon prepayment of the premium by the applicant.

Of necessity, the underlying theory of the dissent is that the conditional binding receipt and the application are simply an applicant's offer to be insured by the company and nothing more. *Etheridge*, in commenting upon and specifically overruling decisions expressing similar reasoning, employed the following language:

These cases are in our opinion based on a misconception of contract law in that they proceed on the basis that the conditional binding receipt coupled with the application for life insurance constitutes

a mere offer to the company. It is this premise in those cases that we renounce.
. . .

Etheridge v. Woodmen of World Life Ins. Soc'y, *supra*, 152 S.E.2d at 775.

■ We adhere to our holding of the majority opinion that prepayment of the insurance premium constituted an acceptance by the applicant of the company's offer to provide interim insurance pending consideration of the applicant's offer to purchase a policy of life insurance. Further, knowledge, or lack of it, that a physical examination report of the applicant was required by the defendant company, is not an element in the existence of interim insurance. Prudential Ins. Co. of America v. Lamme, 83 Nev. 146, 425 P.2d 346 (1967).

■ The defendant next argues that even if interim insurance arose at the time the insurance application was completed, such coverage had lapsed because the applicant had paid only a quarterly premium and his death occurred some five and one-half months after completion of the application. In support of this argument, the defendant cites N.D.C.C. Secs. 26–03–26, 26–03–27, 26–03–29, and 26–03–30, all of which are standard forms of insurance policies, and particularly points to those paragraphs providing that payment of premiums shall be in advance and "payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable."

These provisions of the standard policies so cited have no application because here no policy had issued. Further, this specific provision of the standard policies may be modified or altered by agreement of the parties. By acceptance of the premium in advance, the defendant in this case agreed to provide interim insurance from the date the application was completed until its rejection.

Temporary insurance is measured not by the amount of premium paid but, rather, arises from and upon the act of prepayment of premium and provides interim insurance coverage pending the insurer's consideration of the applicant's offer to purchase the policy of life insurance.

Consideration of the facts of this case and of the relative positions of the parties dictates that the insurer has some responsibility in the termination of interim insurance. We hold that a prepayment of insurance premium and issuance of a conditional receipt gives rise to and extends interim insurance from the time of application for a reasonable time thereafter or until the applicant is notified in writing by the insurer that the application was rejected. The applicant was not so notified in this case of rejection of his application. Further, we are also agreed from all of the circumstances of the case that Mr. Damm's death occurred within a period during which interim insurance reasonably should have been in effect. It follows that the applicant was accorded temporary insurance coverage by the defendant, which was in effect at the date of Mr. Damm's death.

The petition for rehearing is denied.

ERICKSTAD and KNUDSON, JJ., concur.

WM. L. PAULSON, J., deeming himself disqualified, did not participate; DOUGLAS B. HEEN, District Judge of the Second Judicial District, sitting in his stead.

TEIGEN, Judge.
A rehearing, in my opinion, should be granted.

STRUTZ, Chief Justice.

Since I adhere to the opinion expressed in the dissent, in which I joined, I would grant a rehearing.