**AMERICAN-AMICABLE LIFE INSURANCE COMPANY, Appellant,**

**v.**

**Oscar W. LAWSON, Appellee.**

**No. 14526.**

Court of Civil Appeals of Texas.

San Antonio.

Nov. 9, 1966.

Rehearing Denied Dec. 14, 1966.

Jones, Boyd, Westbrook & Lovelace, Waco, for appellant.

Cox, Smith & Smith, San Antonio, for appellee.

MURRAY, Chief Justice.

This suit was instituted by Oscar W. Lawson against American-Amicable Life Insurance Company, seeking to recover the sum of $25,000, allegedly due on an insurance contract upon the life of Richard James Lawson, his son. Stipulations and admissions were made by the parties; and both parties made motions for summary judgment. The trial court overruled defendant's motion for summary judgment, granted plaintiff's motion, and proceeded to grant judgment in plaintiff's favor against defendant for the sum of $25,000, together with interest at the rate of 6 per cent per annum from September 21, 1964, until paid, and all court costs; from which judgment American-Amicable Life Insurance Company has prosecuted this appeal.

The facts herein seem to be undisputed and the rights of the parties are to be determined, as a matter of law, from the undisputed facts. It was stipulated by the parties that the statement of facts was included within the transcript. Whether by this stipulation they intended to change the case from a summary judgment case to an agreed case is not clear.

Richard James Lawson, a young man, twenty-one years of age, applied to appellant for a life insurance policy in the sum of $25,000, with double indemnity in the event of accidental death. His father, Oscar W. Lawson, appellee herein, was the beneficiary. The insured paid the sum of $26.50 as the first monthly premium; $24.25 was the premium for the basic policy and $2.25, for the double indemnity in case of accidental death. The application was dated July 29, 1964, and on the same day insured paid to Bob Bernard, soliciting agent of appellant, the sum of $26.50 in cash, and he received the following receipt:

"No. 66938

RECEIPT FOR FIRST PREMIUM
AMICABLE LIFE INSURANCE
COMPANY

WACO, TEXAS

Received from Richard James Lawson at Killeen, Texas, cash $26.50, check $———, being the full initial premium (not less than one monthly premium) in accordance with application for insurance coverage of even date (this receipt and the application bearing the same identifying number), subject to the agreement of the applicant to all conditions precedent stipulated at any point in the agreement set forth on the reverse side hereof as to the effective date of the insurance coverage. Dated this 29 day of July, 1964.

(Signed) Bob Bernard,
Agent."

The reverse side of the "Receipt for First Premium" contains the following words and language:

"In connection with the receipt on the reverse side hereof it is agreed by the applicant that: (1) the policy for which application is made shall be effective from the date of the medical examination, or if no such examination is required, from the date of this application, subject to payment in full of the initial premium (not less than one monthly premium), subject to the proposed insured person being alive and in good health on such pertinent date, subject to said application being accepted as evidenced by affirmative and active approval by the Company at its Home Office on the basis of the Company's standard published rates for the exact form of policy and amount of coverage, and subject to the agent delivering the receipt set forth on the reverse side hereof; (2) no agent can make contracts or waive any rights without written

consent from the proper executive officer at the Home Office of the Company; (3) no insurance coverage shall be effective if any check given for such premium is not paid on presentation; (4) if written notice of approval is not given within 60 days after the date of said application, disapproval or rejection shall conclusively and automatically occur and exist as of the date of said application; (5) no temporary or interim insurance coverage shall exist by implication, but shall exist only in accordance with the express terms of this agreement; (6) if any policy differing in amount, premium, or form from that described in this application, or if any policy with any endorsement or rider attached is offered and accepted, such acceptance shall ratify any variance with the policy requested in said application, but such policy shall not become effective until actually delivered and accepted in writing during the good health and life-time of the proposed insured person; (7) if any policy issued contains the Auto-matic Premium Loan Provision, I hereby request the Company to take such action as is required in applying such provision, all in accordance with the terms of the policy contract; and (8) the amount of the insurance becoming effective under the terms hereof shall in no event exceed $25,000 less the amount of all other insurance in force with the company."

Insured was drowned on September 6, 1964. The application and receipt were received in the home office of appellant in Waco, Texas, and approved by the proper authority on September 8, 1964, which was two days after insured's death. Appellant did not hear of insured's death until September 9, 1964. On November 3, 1964, appellant paid appellee the sum of $25,000, but refused to pay the additional sum of $25,000 as double indemnity. Appellant based its refusal upon the provision of the 8th condition on the back of the receipt as set out above.

After judgment was rendered in favor of appellee, the parties made the following stipulation in open court, as shown by the judgment, to-wit:

"After the Defendant had given appropriate notice of appeal the parties, through their respective attorneys of record, stipulated and agreed that the Transcript on appeal shall serve also as the Statement of Facts and that no separate Statement of Facts need be prepared or filed, and in open court the Court approved this stipulation and agreement of the parties."

The transcript contains "PLAINTIFF'S REQUEST FOR ADMISSIONS OF FACT" and appellant's answers thereto, reading as follows:

"1. That the copy of the 'Application for Insurance to Amicable Life Insurance Company, Waco, Texas' attached to 'SUPPLEMENTAL ANSWER OF DEFENDANT, SUPPLEMENT TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT', on file herein, is a true and correct copy of the original thereof submitted to the Defendant and presently contained in its files. (Admitted.)

"2. That the applicant in said application, namely, Richard James Lawson, died on September 6, 1964 as a result of drowning. (Admitted.)

"3. That the said application (identified in number 1 above) was approved at the home office of the Defendant in Waco, Texas, on September 8, 1964. (Admitted.)

"4. That on September 8, 1964, the Defendant did not have knowledge of the death of the said Richard James Lawson on September 6, 1964. (Admitted.)

"5. That notice of the death of the said Richard James Lawson was received at the home office of the Defendant at Waco, Texas, on September 9, 1964. (Admitted.)

"6. That the words 'DATE OF POLICY SEPTEMBER 8, 1964' immediately

preceding the words '(FOR HOME OFFICE ENDORSEMENT ONLY)' on the said application were written thereon at the home office of the Defendant at Waco, Texas, after the said application had been approved thereon or about September 8, 1964. (Admitted.)

"7. That the stamped abbreviated word and figures 'SEP–8 1964,' together with the illegible initials immediately following, all immediately after the words 'Approved on Plan Applied For' and immediately above the words 'Medical Director' on the said application were placed thereon at the home office of the Defendant at Waco, Texas, on or about September 8, 1964. (Admitted.)

"8. That after the said application was approved at the home office of the Defendant at Waco, Texas, on or about September 8, 1964, a completed policy pursuant thereto was prepared by the Defendant at its home office at Waco, Texas, for delivery to the said applicant, namely, Richard James Lawson. (Denied. 'No policy was ever prepared at any time.')

"9. If you have admitted the truth of the foregoing statement (number 8 immediately above), attach as a part of your answers a true and correct copy of that entire policy. ('No answer is required in view of the answer to request No. 8. Defendant cannot attach a copy of a policy which was not ever prepared.')

"10. That the said policy as so prepared by the Defendant for delivery to the said Richard James Lawson contained a 'Supplemental Agreement For Accidental Death Benefit' in the amount of $25,000.-00, substantially in the form of that attached as a 'sample' to 'SUPPLEMENTAL ANSWER OF DEFENDANT, SUPPLEMENT TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT' on file herein. ("In view of the answers to requests Nos. 8 and 9, request No. 10 which stated 'That the said policy as so prepared by the Defend-ant for delivery to the said Richard James Lawson contained a 'Supplemental Agreement for Accidental Death Benefit' can only be denied since such a policy was not ever prepared.")

"11. That on or about July 9, 1964, the said Richard James Lawson paid in cash to an agent of the Defendant $26.50. (Admitted.)

"12. That $24.25 of the said $26.50 was the monthly premium for a basic policy of life insurance in the amount of $25,000.00 on the life of the said Richard James Lawson and $2.25 thereof was the monthly premium for double indemnity benefits in the event of accidental death in the amount of $25,000.00 (Admitted.)

"13. That none of the said $26.50 was returned by the Defendant to the said Richard James Lawson during his lifetime. (Admitted.)

"14. That none of the said $26.50 was tendered by the Defendant to the said Richard James Lawson during his lifetime. (Admitted.)"

The important part of the application for insurance as far as this appeal is concerned is as follows:

The application was by Richard James Lawson to "Amicable Life Insurance Company (now American-Amicable Life Insurance Company) for a policy of non-participating insurance * * *.

"2. A. Plan Executive preferred. Amount $25,000.

    *   *   *   *   *   *

    C. * * * Double Indemnity 'Yes'

3. A. Premiums are to be Payable (Check Selection)
    ___Ann. ___Semi-Ann. ___Quar. x Mo.

    B. Total Mo. Premium $26.50

  *   *   *   *   *   *

11. Beneficiary for Death Benefits

    A. Full Name

     OSCAR WILLIAM LAWSON."

It will be noted that the exception "(8)" on the reverse side of the "Receipt for First Premium" states the same amount as does the application, $25,000.00. The matter of double indemnity is treated under a separate provision.

It is undisputed that $24.25 of the sum of $26.50 paid by insured for the first monthly premium was for basic insurance, and $2.25 for double indemnity. The application and receipt were on forms furnished by appellant.

■ All of the admitted and undisputed facts were sufficient to cause an ordinary applicant for insurance to understand that the limitation contained in provision "(8)" related only to the basic insurance, and did not have the effect of excluding the provision for double indemnity in case of accidental death. It was appellant's duty to so word the provisions on its application and receipt that they would not be misunderstood by the ordinary applicant for insurance who is not schooled in the insurance business.[1]

■ When we consider that the forms filled in and used were furnished by appellant, that the premium paid was for both the basic insurance and the accidental benefits, that the amount of limitation stated in exception "(8)" of the receipt, $25,000.00, was the exact amount of insurance stated in the application, that the subject of double indemnity was treated separately and apart from the amount of insurance in the application, we must construe exception "(8)"

of the receipt as not denying to the ordinary applicant his right to double indemnity.

■ It is our duty to construe the provisions of the receipt as meaning what would be understood by an ordinary person and not as they might be understood by a person schooled in the insurance business. Both parties to this suit admit that this exact question has never been decided in this State, and the appellant says not in the United States or Canada.

As to the insurance contract for death benefits being separate and apart from the contract for accidental death benefits, see Greer v. Franklin Life Ins. Co., 148 Tex. 166, 221 S.W.2d 857; Mainer v. American Hospital and Life Ins. Co., Tex.Civ.App., 371 S.W.2d 717.

We consider what was said by the Supreme Court of Tennessee in American Trust & Banking Co. v. Lessly, 171 Tenn. 561, 106 S.W.2d 551, 111 A.L.R. 59, as persuasive here, to-wit:

"In the former case the court held that an applicant for life insurance, when asked to name the companies in which his life was insured, was not required to disclose an accident policy. The court said that a general question concerning other existing life insurance did not call for a disclosure of existing accident insurance. The court was considering the meaning of language used in an application prepared by a life insurance company and merely concluded that the term 'life

---

1. The following authorities, while not directly in point, are very enlightening on the question here involved: Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 208 A.2d 638 (1965); Ransom v. Penn Mutual Life Ins. Co., 43 Cal.2d 420, 274 P.2d 633 (1954); Simpson v. Prudential Ins. Co. of America, 227 Md. 393, 177 A. 2d 417 (1962); Albers v. Security Mut. Life Ins. Co., 41 S.D. 270, 170 N.W. 159 (1918); Gaunt v. John Hancock Mutual Life Ins. Co., 160 F.2d 599 (2 Cir. 1947, cert. denied, 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858); Duncan v. John Hancock Mut. Life Ins. Co., 137 Ohio St. 441, 31 N.E.2d 88 (1940); Metropolitan Life Ins. Co. v. Grant, 268 F.2d 307 (9 Cir. 1959); Wood v. Metropolitan Life Ins. Co., 302 F.2d 802 (9 Cir. 1962); Life Ins. Co. of North America v. De Chiaro, 68 N.J.Super. 93, 172 A.2d 30 (1961); Liberty National Life Ins. Co. v. Hamilton, 237 F.2d 235 (6 Cir. 1956); McAvoy Vitrified Buick Co. v. North American Life Assurance Co., 395 Pa. 75, 149 A.2d 42 (1959); United Founders Life Ins. Co. v. Carey, 363 S.W.2d 236 (Tex.1961); Colorado Life Co. v. Teague, 117 S.W.2d 849 (East.Civ.App. writ dismissed).

insurance' as there used meant life insurance in its conventional sense, not life insurance in its broad sense."

Undoubtedly, in its broader sense the term "life insurance" may include accident insurance. Provident Life & Accident Ins. Co. v. Rimmer, 157 Tenn. 597, 12 S.W.2d 365. One of the risks assumed in accident insurance is death of the insured by accident. The risk assumed in conventional life insurance is death of the insured from any cause. Life is insured under either contract.

The judgment is affirmed.

BARROW, J., not participating in the decision of this case.