**Affirmed and Memorandum Opinion filed March 27, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-01115-CV

**GIOVANNY VASQUEZ, SUBSTITUTE TRUSTEE OF THE BEATRICE RAMON 2007 IRREVOCABLE TRUST, Appellant**

**V.**

**RELIASTAR LIFE INSURANCE CO., Appellee**

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2009-38805**

## M E M O R A N D U M   O P I N I O N

Giovanny Vasquez, Substitute Trustee of the Beatrice Ramon 2007 Irrevocable Trust ("the Trust") contends the evidence is legally insufficient to support the jury's finding that certain material misrepresentations affected the risk assumed by ReliaStar Life Insurance Co. We affirm

# I. BACKGROUND

In March 2008, Russell Mackert and Beatrice Ramon submitted an application with ReliaStar for insurance on the life of Ramon, seeking an initial term of ten years for an amount of $2.5 million. The application named the Trust as the proposed beneficiary and owner of the policy and Mackert as trustee. The asserted purpose of the Trust was "Estate Conservation." Mackert and Ramon also represented in the application that Ramon's total net worth was $2.4 million, her annual interest and other income was $150,000, and she had never declared bankruptcy. Mackert and Ramon signed the application, verifying that the information provided was true and correct to the best of their knowledge and acknowledging that ReliaStar may seek to rescind coverage due to material misrepresentations.

Shortly thereafter, ReliaStar issued a policy insuring the life of Ramon for $2.5 million and naming the Trust as the owner of the policy ("the Policy"). The Policy had an initial term of ten years, during which time the annual premium was $26,125. After the initial ten-year period, the annual premium greatly increased. The Policy also contained a contestability provision, allowing ReliaStar to "contest the validity of this Policy based on material misrepresentations made in the initial application for two years from the Issue Date, during which time the Insured was living."

Ramon died in November 2008. In January 2009, Mackert notified ReliaStar about Ramon's death. ReliaStar advised Mackert that, because Ramon's death occurred within the two-year contestability period, ReliaStar would conduct an investigation to determine whether information provided in the application was correct. Additionally, at some point, Mackert resigned as trustee of the Trust and

appointed Giovanny Vasquez as substitute trustee. Vasquez purchased the Trust for $500,000 as an investment on behalf of investors he represented.

In June 2009, the Trust filed suit against ReliaStar. While suit was pending, ReliaStar continued its contestability investigation. ReliaStar determined that neither Ramon nor Mackert made any misrepresentation regarding Ramon's health or medical history. However, ReliaStar discovered that Ramon misrepresented her financial information because she had previously declared bankruptcy, had no assets, and did not receive any income except social security payments. Moreover, Ramon and Mackert misrepresented the purpose for the life insurance, stating it was for "Estate Conservation" when the actual purpose was to procure "Stranger Owned Life Insurance." Based on these misrepresentations, ReliaStar rescinded the Policy and returned the premium paid by the Trust.

In April 2012, the trial court conducted a jury trial on the Trust's suit. As discussed below, the jury charge contained a single question asking whether the insurance application contained material misrepresentations that affected the risk assumed by ReliaStar. The jury answered in the affirmative, and the trial court rendered a take nothing judgment against the Trust.

## II. LEGAL SUFFICIENCY

In a single issue, the Trust contends the evidence is legally insufficient to support the jury's finding that the application contained material misrepresentations that affected the risk assumed by ReliaStar.

### A. Standard of Review

When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822

3

(Tex. 2005). The fact finder is the sole judge of witness credibility and the weight to give their testimony. *Id.* at 819. We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.* When a party challenges legal sufficiency relative to an adverse finding on which he did not bear the burden of proof, we apply the "no evidence" standard and may sustain the challenge only when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact. *Foley v. Capital One Bank, N.A.,* 383 S.W.3d 644, 646–47 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *City of Keller*, 168 S.W.3d at 810).

## B. Analysis

The sole question presented to the jury in the charge is as follows:

**QUESTION NO. 1**

Did the Policy application contain misrepresentations that were:

(1) of a material fact

and that

(2) affected the risk assumed?

. . .

A misrepresentation of fact is "material" if it induced [ReliaStar] to issue the Policy.

Answer "Yes" or "No":

Answer: <u>Yes</u>

4

This question tracks the language of section 705.051 of the Insurance Code:

A misrepresentation in an application for a life, accident, or health insurance policy does not defeat recovery under the policy unless the misrepresentation:

(1) is of a material fact; and

(2) affects the risks assumed.

Tex. Ins. Code Ann. § 705.051 (West 2009).

The Trust does not challenge the jury's finding that Ramon's financial misrepresentations were material. Instead, the Trust argues there is no evidence that Ramon's misrepresentations "affected the risk assumed." Specifically, the Trust argues Ramon's false statements regarding her worth, income, bankruptcy history, and the purpose of the Trust did not affect the risk of Ramon dying because none of these statements had any bearing on her health or death.[1]

ReliaStar responds that nothing in the plain language of section 705.051 requires that a misrepresentation involve the insured's health or life expectancy in order for the misrepresentation to affect the risks assumed by the insurer. *See SJ Med. Center, L.L.C. v. Estahbanati*, 418 S.W.3d 867, 873 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words."). We agree. Had the Legislature intended to limit the meaning of the "affects the risks assumed" prong in section 705.051, it would have utilized similar language as it used in subsection 705.004(b)(2), which permits the insurer to void a policy pursuant to a misrepresentation provision if, among other results, the insurance applicant's misrepresentation "contributed to the contingency

___

[1] The Trust spends several pages of its brief explaining why section 705.051 is purportedly different than its predecessor statute relative to the materiality and affects-the-risk prongs. Because the evidence is sufficient to support findings that Ramon's misrepresentations were both material and affected the risk, we need not delve into the Trust's statutory comparison.

5

or event on which the policy became due and payable." *Compare* Tex. Ins. Code Ann. § 705.051, *with id.* § 705.004(b)(2) (West 2009).

Undoubtedly, as the caselaw cited by the Trust provides, the risk assumed by a life-insurance insurer is the risk that the insured will die during the insurance term. *See American-Amicable Life Ins. Co. v. Lawson*, 409 S.W.2d 462, 467 (Tex. Civ. App.—San Antonio 1966) ("The risk assumed in conventional life insurance is death of the insured from any cause."), *rev'd on other grounds*, 419 S.W.2d 823 (1967); *Mutual Life Ins. Co. v. Simpson*, 88 Tex. 333, 339, 31 S.W. 501, 503 (1895) (Hume, Special C.J., dissenting) ("The purpose of a life insurance company is to secure risks on sound lives. It is interested in knowing that the applicant for insurance is not affected with infirmities that will hasten the event against which it insures.").[2] However, this is a risk to the insurer only because it triggers the insurer's obligation to pay benefits. Hence, the risk assumed by ReliaStar was that it would have to pay $2.5 million if Ramon died. The amount of money contingently owed by the insurer is undeniably part of the risk of providing coverage.

ReliaStar's underwriters testified that *all* information provided by an insurance applicant is considered when determining whether to provide coverage and how much coverage to provide. The underwriters further emphasized that ReliaStar determines "the amount of insurance that would be acceptable" based on the purpose for the insurance, such as whether the insurance is for estate preservation. ReliaStar does not want to provide more life insurance than what the insured and her beneficiary actually need. If ReliaStar issues a high-paying policy

---

[2] The Trust also cites *Southern Surety Co. v. Solomon*, in which the Austin Court of Appeals determined the evidence supported the jury's finding that the insurance applicant's representations regarding his weekly salary were not material to the risk assumed by the insurer. 4 S.W.2d 599, 603 (Tex. Civ. App.—Austin 1928, no writ). However, unlike in *Solomon*, the jury in the present case found that the applicant's misrepresentations were material and affected the risk assumed by the insurer.

6

to a person with poor finances, there is an increased risk that the person will not be able to afford the premiums. Additionally, the underwriters explained that ReliaStar does not want to provide "Stranger Owned Life Insurance" policies because the person who is the beneficiary of the policy has no interest in the continued life of the insured and is hoping the insured will die within the policy term. According to the underwriters, had Ramon been truthful about her financial standing, ReliaStar would not have issued her a $2.5 million policy and probably would not have provided any insurance because she did not need coverage.

In addition to the underwriters' testimony, ReliaStar's financial-underwriting guidelines were admitted into evidence. These guidelines include the following statements demonstrating the importance of financial information in a life-insurance application:

- "Resolving cases of questionable insurable interest and identifying cases of apparent overselling are often difficult. By keeping in mind the affordability of the premium in relation to the applicant's financial position, the underwriter should question and even discourage business, if it indicates a potential early lapse or windfall profit to the beneficiary."

- "[Certain financial considerations] become even more important as the amount of insurance increases because of the additional liability assumed by the company."

- "One of the underlying principles of financial underwriting is that the beneficiaries of the policy, regardless of who they are, should not benefit financially on the death of the insured more than they would have, had the insured lived."

- "The bulk of the insurance policies written by the Industry are below $1,000,000. . . . The number of large multi-million dollar cases is more limited. As a result, the effect of a few early claims for multi-million dollar cases may impact the company's block of business significantly. Careful evaluation of the financial aspects of multi-million dollar cases is, therefore, critical in the process of underwriting large line risks."

7

- "Financial underwriting is accomplished with a strategy that allows the approval of cases to ultimately meet the company's profit and marketing objectives and the rejection of cases that will not."
- "Individuals who remain in good health and find the premiums burdensome may lapse their policies before the company can recoup expenses."

In sum, Ramon's financial misrepresentations affected the amount of coverage provided, and therefore the risk assumed, by ReliaStar. Clearly, Ramon and Mackert understood the correlation between financial information and the obtainable amount of life-insurance coverage because they misrepresented Ramon's financial information on the insurance application. We hold that the evidence is legally sufficient to support the jury's affect-the-risk finding and overrule the Trust's sole issue.

We affirm the trial court's judgment.


/s/    John Donovan
Justice


Panel consists of Justices Christopher, Donovan, and Brown.