**Harriet Lois JONES, Plaintiff-Appellee,**

v.

**JOHN HANCOCK MUTUAL LIFE IN-SURANCE COMPANY, Defendant-Appellant.**

**No. 18991.**

United States Court of Appeals
Sixth Circuit.

Oct. 6, 1969.

Gordon B. Wheeler, Grand Rapids, Mich., Wheeler, Upham, Bryant & Uhl, Grand Rapids, Mich., on brief, for appellant.

Douglas W. Hillman, Grand Rapids, Mich., Hillman, Baxter & Hammond, by Robert N. Hammond, Grand Rapids, Mich., on brief, for appellee.

Before O'SULLIVAN, McCREE and COMBS, Circuit Judges.

COMBS, Circuit Judge.

The appellant, John Hancock Mutual Life Insurance Company, had before it an application for a policy of insurance on the life of Raymond Edsel Jones at the time he was killed in the crash of his private airplane. The company declined to issue the policy. Suit was brought on the policy by decedent's wife, Harriet Lois Jones. Following a jury trial, verdict was had for plaintiff in the amount of the policy, $269,211.50. Judgment was entered accordingly, and the insurance company appeals. The opinion of District Judge Noel Fox is reported at 289 F.Supp. 930.

Hugh W. Crouse, an independent insurance agent with offices in Mansfield, Ohio and Los Angeles, California, had solicited Jones to buy the policy. In his solicitations for the company, Crouse acted as special agent for the William B. Hoyer Agency of Columbus, Ohio, one of John Hancock's oldest and most successful general agencies. In December, 1965, Crouse persuaded Jones to purchase a life insurance policy with a face value of

$43,000, an additional $43,000 in the event of accidental death, and additional payments to Mrs. Jones of $860 a month for a decreasing term of twenty years. The application was substantially completed in Mansfield, and Jones was given two physical examinations which he passed.

The Jones family, who lived in Grand Rapids, Michigan, accepted an invitation by Crouse to spend the Christmas holidays with him in Los Angeles. Mrs. Jones and a daughter went to California by commercial airline, but Jones and their three small sons undertook to make the trip in his private airplane. They were grounded in Texas by bad weather and completed the trip by commercial airline.

While in California, Jones' insurance application was completed, together with a supplemental aviation application required because he was a licensed pilot. The supplemental application required certain information on Jones' flying hours but, since his log books were with the plane in Texas, he estimated his actual flying time for the years 1964–1965. His estimate of this time was 410 hours whereas the log books later revealed that he had actually flown 545.9 hours. Crouse accepted the estimate, knowing it was not exact. He told Jones that an additional premium of $2.50 per $1,000 of coverage might be required, and Jones agreed to this.

After completing the initial and supplemental application, the Joneses signed two cognovit notes in blank and an assignment of the policy as collateral, using forms obtained from the Hoyer Agency. Although Jones expressed a willingness to pay the first premium by check, Crouse requested that he sign the cognovit notes in blank so that the Hoyer Agency could compute the exact premium and insert it in the note. Crouse had frequently employed the cognovit note procedure. According to Crouse, after these documents had been completed, Jones asked whether he was covered and Crouse told him that he was "technically covered."

Crouse endorsed one of the cognovit notes and, on December 30, 1965, the note was mailed to the Hoyer Agency along with the application, supplemental application, medical reports, and other accompanying documents. The conditional receipt was not filled out by Crouse and was mailed to the Hoyer Agency still attached to the application. Crouse testified that it was not customary to give the receipt to the applicant when payment was not made in cash, unless there was a specific request for it.

The documents were received by the Hoyer Agency on January 3, 1966. The premium was computed and inserted on the cognovit note, and a ten-month maturity date was placed on the note. The figure $1,134.45, the amount of the premium, was also inserted in the application as the amount of the advance payment. The conditional receipt was detached and retained by the Hoyer Agency. The application contained a notation that the receipt was not to be detached unless advance payment had been made. The application, supplemental application, and medical reports were forwarded to appellant's home office where they were received on January 5, 1966.

On January 7, 1966, Jones was killed when his airplane crashed as he was flying it from Texas back to Grand Rapids. The company learned of his death on January 11, and denied the application on March 15, 1966.

The company relies for reversal on these grounds:

(1) No advance payment of the premium was made and so there was no immediate coverage.

(2) Even if there was advance payment of the premium, no conditional receipt was issued; or, if there was a conditional receipt, its terms were not met in that the insured was not acceptable "for the premium class or amount and plan of insurance applied for" and the company's underwriting requirements were not met.

(3) The application and conditional receipt being unambiguous, the admis-

sion of oral testimony to vary their terms or to show an inconsistent oral contract was prejudicially erroneous.

(4) The court erred in ruling that Crouse, the company's agent, could be cross-examined as a managing agent under Rule 43(b), Federal Rules of Civil Procedure.

(5) The court erred in permitting plaintiff's counsel to refer several times to the illness of two of plaintiff's children.

■ We hold in regard to ground (1) that execution of the cognovit note under the circumstances here shown constituted advance payment of the premium. See the opinion of the District Judge.

Grounds (2) and (3) will be considered together. The conditional receipt reads in pertinent part:

"If this sum is at least one month's proportionate part of the premium according to the Company's published rates for the policy and premium interval selected in the application, and if the Company at its Home Office shall determine that each person proposed for insurance, including the proposed Insured, was, on the date of completion of the latest of all required Parts A and B and medical examinations pertaining to each such person, acceptable under the Company's rules for the premium class, amount and plan of insurance, and additional benefits, if any, applied for, the contract applied for shall take effect retroactively as of the date of the latest of all required parts of the application and medical examinations, or of such other date as may be requested in the application and accepted by the Company, notwithstanding any change in acceptability due to disease contracted or injury sustained after the date of completion of all required parts of the application and medical examinations."

■■ The effect of a conditional receipt pending issuance of a life insurance policy has been a controversial subject. See Annot. 2 A.L.R.2d 936 (1948). It

was held by the District Judge and it is assumed by the parties that the law of Ohio applies in this case. We agree. Ohio takes a liberal view. Duncan v. John Hancock Mutual Life Ins. Co., 137 Ohio St. 441, 31 N.E.2d 88 (1940); Leube v. Prudential Insurance Co., 147 Ohio St. 450, 72 N.E.2d 76, 2 A.L.R.2d 936 (1947); Prudential Insurance Co. v. Howard, Ohio App., 18 Ohio L.Abst. 688 (1935). It was said by this Court in Gettins v. United States Life Insurance Company, 221 F.2d 782 (1955):

"It is settled in Ohio that insurance can be effective immediately upon payment of the premium and issuance of a receipt, if the parties so intend. [Citing *Duncan*, supra.] Such temporary insurance remains in effect until the company rejects the application, although no notice to the insured of such rejection is necessary to effect termination. [Citing *Leube*, supra.]"

Ambiguities are resolved against the insurer. Gaunt v. John Hancock Mutual Life Ins. Co., 160 F.2d 599 (2nd Cir. 1947), cert. denied, 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858.

■ We do not understand that the company seriously contends the agent's failure to fill out the conditional receipt and deliver it to the applicant could render ineffective coverage otherwise available. Attention is called to this fact in the brief but no authority is cited. In any event, we hold that, since the premium was paid and there was substantial compliance with the directions in the application, the company cannot avoid liability simply because its agent did not actually deliver the receipt to the applicant.

The company's main argument in regard to the conditional receipt is that by its terms Jones was required to have an x-ray and electrocardiogram; also that Jones was unacceptable for the insurance applied for because he had understated his past flying hours. The District Court properly admitted oral evidence on these points. The evidence established beyond contradiction that no x-ray or

electrocardiogram was required; also that there was no material misrepresentation as to Jones' flying hours and the discrepancy was immaterial.

■ The District Judge was also of the opinion that the conditional receipt was ambiguous and oral testimony was admissible to resolve the ambiguity. We agree. That was the holding in *Duncan*, supra (137 Ohio St. 441), in regard to a conditional receipt not substantially different from this one. It is true that the clauses have been rearranged and the juxtaposition of the words is different but the meaning is still not clear. The ordinary applicant, unversed in construing complex insurance verbiage, could reasonably understand that he had protection once he had paid the premium, completed the application, and passed the required physical examinations. The receipt obviously does not plainly state, as the company contends, that the insurer will not be bound until the application has been formally accepted. The language is that of the company. If it had desired that its policy would be effective only after approval by the home office, it could easily have said so.

Courts have for many years spoken of the attempt by insurance companies "to impose upon words of common speech an esoteric significance intelligible only to their craft." *Gaunt*, supra. Making a policy effective from the date of application obviously makes it more attractive to the applicant and more saleable by the insurer. If the conditional receipt is to be used as an inducement to the applicant, the insurer may not hide behind ambiguous language to deny liability.

■ We look now to ground (4), the contention that it was error to allow plaintiff to cross-examine agent Crouse as a "managing agent." Since Crouse was not a common employee without discretionary authority, but could be expected to carry out his principal's directions to give testimony for a party and to identify with the principal's interest, he met the "managing agent" test set forth in Brandon v. Art Centre Hospital,

366 F.2d 369 (6th Cir. 1966). Also see Skogen v. Dow Chemical Co., 375 F.2d 692 (8th Cir. 1967), where it was noted that in determining who is a managing agent courts should not be so technical as to disqualify for cross-examination the only person who has knowledge of the subject matter of the litigation.

■ Lastly, appellant claims that it was error to admit evidence that plaintiff's fifteen-year-old twin boys suffered from hemophilia. This testimony allegedly was admitted to show that the Joneses needed immediate coverage. It was patently inadmissible and the trial judge erred in permitting its admission. Normally, the admission of such prejudicial evidence would require reversal. However, we do not regard its admission here as constituting grounds for reversal since, under Ohio law and in view of the uncontroverted evidence, plaintiff was entitled to a directed verdict.

Judgment affirmed.