AETNA INSURANCE COMPANY, Appellant v.
LABOR et al., Respondents

(179 N.W.2d 271)

(File No. 10760.  Opinion filed September 1, 1970)

Costello, Porter, Hill, Banks & Nelson, Rapid City, for plaintiff and appellant Aetna Insurance Co.

Kellar, Kellar & Driscoll, Lead, for defendant-respondent Black Hills Chair Lift Co.

Bangs, McCullen, Butler, Foye & Simmons and James N. Clapp, Rapid City, for defendant-respondent Robert Labor.

WUEST, Circuit Judge.

The Black Hills Chair Lift Company, hereinafter referred to as "Black Hills", operates a chair lift near Lead, South Dakota, which it used both winter and summer in connection with recreational activities. In addition to the chair lift, it operates mobile equipment such as ski-doos, tote-gotes, snow packers, caterpillar tractors, a snow plow, and other mobile equipment. Since 1962 Black Hills has continued to expand its recreational facilities and has had some type of construction underway each summer and fall except the year 1966. In 1967 the old chair lift was torn down and a new one built. It was necessary to pour concrete foundations for 15 steel towers. Black Hills utilized their equipment and employees for this purpose. Since the terrain was too steep for concrete trucks, small caterpillar tractors with front-end loading buckets owned by Black Hills were used to transport the concrete purchased by it to the foundations.

On August 18, 1967, defendant Labor was injured at the parking lot by one of the caterpillar tractors being op-

erated by an employee of Black Hills while transporting concrete to a tower foundation.

Prior to November 1, 1966, Mr. Kenneth C. Kellar, President of Black Hills, purchased personal and property liability insurance from plaintiff, Aetna Insurance Company, hereinafter called "Aetna." Mr. Kellar advised Aetna's agent that Black Hills wanted:

> "* * * the broadest possible coverage for all of its mobile equipment to cover all of its operations in connection with the maintenance, ownership, and use of its premises, both summer and winter; that defendant corporation (Black Hills) wanted this coverage because of the greater use of its mobile equipment in connection with its expanded activities".

Aetna issued a liability policy to Black Hills effective November 1, 1966, for one year. The policy is the usual printed policy with space for typewritten insertions of coverage, descriptions and endorsements. A printed page of the policy contains the coverage and exclusions. At the top thereof in bold face print is the following:

COVERAGE FOR DESIGNATED PREMISES AND RELATED OPERATIONS IN PROGRESS OTHER THAN STRUCTURAL ALTERATIONS, NEW CONSTRUCTION AND DEMOLITION

Further down in this printed page under exclusions, the policy provides the insurance does not apply:

> "(o) to bodily injury or property damage arising out of structural alterations which involve changing the size of or moving buildings or other structures, new construction or demolition operations performed by or on behalf of the named insured."

A typewritten endorsement on a form provided by the company and attached to the policy provides:

"\* \* \* coverage (is)[1] afforded under this policy for Tote-Gote, Snow Packers and Ski-Doos, and other equipment used in the maintenance, ownership and use of the premises, provided that such equipment is not licensed for use on public highways and roads."

After the accident, Labor commenced an action against Black Hills for alleged personal injuries. Thereafter, Aetna commenced this declaratory judgment action against Black Hills and Labor to determine if it has any obligation for the claim of Robert Labor against Black Hills and if it has any obligation to defend the claim under the provisions of the liability policy. The trial court held it did, and Aetna appeals. We affirm.

The decisive issue is the modification of the printed exclusion by the typewritten endorsement. Considered together the two provisions are conflicting. The transportation of concrete to the tower foundations was new construction as contemplated by the printed exclusion of the policy, however, the typewritten endorsement provides the broader coverage requested by Mr. Kellar. Its purpose was to provide broader coverage than contained in the printed policy, otherwise there would not have been any need for it. In this jurisdiction, if there is any uncertainty or ambiguity in the contract of insurance it must be construed most strongly against the insurer and in favor of the insured. Ehrke v. North American Life & Casualty Co. of Minneapolis, 71 S.D. 376, 24 N.W.2d 640. Our statutes provide every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application lawfully made a part of the policy. SDCL 58-11-39.

---

1. "is" was omitted in the endorsement. The trial court and parties have treated this as a typographical error which is obvious.

Ordinarily, and as a rule, in case of repugnancy or ambiguity between general and special clauses or provisions of an insurance policy, the special clauses or provisions will control the general ones. 43 Am.Jur.2d, Insurance, § 266. It is also the rule with reference to insurance policies, that the written or typed portion of an insurance policy must be taken as a more immediate or deliberate expression of the intention of the parties than the printed portion if there is any repugnancy or conflict between them and that in such case, the written or typed portion prevails. 43 Am.Jur.2d, Insurance, § 267.

The caterpillar hauling concrete to the tower sites was "other equipment used in the * * * ownership and use of the premises".

The judgment is affirmed.

All the Judges concur.

WUEST, Circuit Judge, sitting for RENTTO, J., disqualified.