CAPITOL INDEMNITY CORPORATION, Plaintiff and Appellee,

v.

The BANK OF HOVEN and Wayne Gueke, Defendants and Appellants,

v.

Ken W. BROWN, d/b/a Brown Insurance Agency and Sentinel General Agency, Third Party Defendants and Appellees.

No. 16651.

Supreme Court of South Dakota.

Considered on Briefs Jan. 9, 1990.

Decided March 7, 1990.

the indicia reliability factors.

Jerry Johnson of Banks, Johnson, Johnson, Colbath & Huffman, Rapid City, for appellee Capitol Indem. Corp.; John J. Delaney, Rapid City, on the brief.

David A. Von Wald, Hoven, for appellant Bank of Hoven.

Robert F. La Fleur of La Fleur & La Fleur, Rapid City, for appellant Wayne Gueke.

Thomas R. Pardy of Mumford, Protsch & Pardy, Howard, for appellee Brown Ins. Agency.

Gene N. Lebrun, Rapid City, for appellee Sentinel General Agency.

MILLER, Justice.

In this appeal, we affirm a circuit court summary judgment and hold that an insurance binder is not an insurance policy within the contemplation of SDCL 58–10–10.

## FACTS

For the limited purposes of this appeal, the facts are not disputed. Appellant Wayne Gueke was the owner of the Hot Springs Country Club (HSCC) in Hot Springs, South Dakota. On September 15, 1986, appellee Ken Brown d/b/a Brown Insurance Company issued an insurance binder providing "All Risk" coverage to Gueke as owner and appellant Bank of Hoven as mortgagee. The binder was issued, naming appellee Sentinel General Agency as the company. On November 4, 1986, a formal insurance policy was issued by appellee Capitol Indemnity Corporation. On December 14, 1986, HSCC was destroyed by fire.

The Capitol Indemnity policy insured the real estate for $175,000 and the personal property for $25,000. Therefore, Gueke and the Bank filed separate proof of loss documents demanding a $200,000 recovery. Capitol Indemnity denied the claim, insisting that by virtue of SDCL 58–10–10 it was responsible only for the actual cash value of the property destroyed (approximately $71,000) rather than the face value of the policy.

The appeal has arrived before this court from a summary judgment granted to appellees in Capitol Indemnity's declaratory judgment action. There are other issues (including claims of misrepresentation, omission and arson) which are not relevant here. Although the procedural history is somewhat unusual (including the trial court basing its holding on certain factual "assumptions" which are not necessarily accurate) no issue in that regard is presented to us.

## ISSUE

IS AN INSURANCE BINDER CONTEMPLATED BY SDCL 58–10–10?

## DECISION

SDCL 58–10–10 states, in salient part:

Whenever any policy of insurance is written or renewed to insure any real property in this state, including structures on land owned by a person other than the insured, against loss by fire, tornado or lightning and the property insured is wholly destroyed, without

criminal fault on the part of the insured or his assigns, the amount of insurance written in the policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages, with the following conditions:

> (1) This section applies only if a total fire loss occurs ninety days or more after the policy was made or written or ninety days or more after the policy limits were increased by twenty-five percent or more at the insured's request. However, within the first ninety days, payment to the insured shall be in accordance with the terms and conditions of the policy for valuation of the property absent stated amount[.]

It should first be observed that the binder on its face states: "This binder is a *temporary insurance contract*, subject to the conditions shown on the reverse side of this form." (Emphasis added.) On the reverse side there are two paragraphs labeled "Conditions," which state:

> ... This insurance is subject to the terms, conditions and limitations of the policy(ies) in current use by the Company.
>
> This binder may be cancelled by the Insured by surrender of this binder or by written notice to the Company stating when cancellation will be effective. This binder may be cancelled by the Company by notice to the Insured in accordance with the policy conditions. This binder is cancelled when replaced by a policy. If this binder is not replaced by a policy, the Company is entitled to charge a premium for the binder according to the Rules and Rates in use by the Company.

It is obvious that the insurer, although intending to provide some type of *temporary* insurance via the binder, further intended to keep it and the policy separate by its specific use of the foregoing conditions.

Additionally, we note that SDCL 58–10–2 provides a definition for the term "policy." " 'Policy' means the written contract of or written agreement for or effecting insurance, by whatever name called, and includes all clauses, riders, endorsements and papers which are a part thereof." Binder is not mentioned within this definition. Further, SDCL 58–11–2 mandates the specific contents for every "policy," as the term is defined in SDCL 58–10–2. The binder fails to contain all these items. An additional distinction is that under SDCL 58–10–2 policies are to be in writing; whereas, under SDCL 58–11–29, binders may be made orally or in writing. We also recognize that the legislature chose to make a legal distinction by enacting statutory provisions which specifically address binders. For example, SDCL 58–11–29 designates what terms shall be included, SDCL 58–11–30 speaks to their duration, SDCL 58–11–31 addresses the manner in which a binder may be extended or renewed, and SDCL 58–11–32 designates the types of insurance to which they may apply. It is also important to note that these statutes address how the binders affect the policy and vice versa.

In *Grandpre v. Northwestern National Life Ins. Co.*, 261 N.W.2d 804 (S.D.1977), we recognized that similarities exist between binders, conditional receipts, and deposit receipts. We made the following analysis of these temporary contracts of insurance and how they are dissimilar to policies in their fundamental purpose.

> [T]he [binder] is a sales device instituted by the ... insurance industry whereby [an] ... insurance company would warrant coverage upon payment of the initial ... insurance premium at the time of application and the satisfaction of various conditions precedent to coverage. These conditions may include insurability, actual acceptance by the company and delivery and receipt of the policy. The purpose of [the binder is] to correct the disadvantageous situation that was present due to the necessary interval between the time a policy of insurance is applied for and the time it is issued. A lack of coverage during this interval before issuance of the policy, which may extend for days or weeks, is disadvantageous to the applicant.... The [binder] remedies these problems by requiring an initial premium which is usual-

ly forfeited if the applicant revokes his desire for the insurance while the company is determining the insurability of the applicant. It also usually provides temporary insurance to the applicant while the company is determining the applicant's insurability....

261 N.W.2d at 806 (footnote omitted). *See also Matousek v. S.D. Farm Bureau Mut. Ins.*, 450 N.W.2d 236 (S.D.1990); *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27 (Wyo.1983).

A clear distinction exists between binders and policies in this state. We therefore conclude that the term "binder" was clearly not intended to be included within the meaning of the term "policy" as it is used in SDCL 58–10–10.

Affirmed.

MORGAN and HENDERSON, JJ., concur.

WUEST, C.J., concurs specially.

SABERS, J., dissents.

WUEST, Chief Justice (concurring specially).

I concur in the majority opinion, but, write specially because the dissent may be misleading. Capitol's argument in support of the notice of review states its argument is based upon the assumption the binder in question is a policy for the purpose of the valued policy provisions. Since the majority decision holds otherwise, it is unnecessary to address the notice of review. In other words, the dissent is discussing a non-issue and would remand to the trial court for determination of a non-issue. In my opinion that would be non-productive.

SABERS, Justice (dissenting).

I take issue with the trial court basing its holding on certain factual "assumptions" which are not necessarily accurate. (*See* majority opinion.) I also take issue with the majority opinion's statement thereon that "no issue in that regard is presented to us." The "assumed" effective date of the binder is immaterial. The date the

policy *was made or written* is crucial. There simply is no evidence to support any claim that the binder was made, written, or dated at any time earlier than October 23, 1986 (the date the binder was dated and signed). *See* copy of binder in appendix A of brief of Capitol Indemnity Corp. SDCL 58–10–10(1) provides in substance that the stated amount of the value of the insured property shall apply only if a loss occurs ninety days or more after the policy *was made or written.*

By notice of review, counsel for Capitol Indemnity urges us * to affirm the summary judgment because SDCL 58–10–10 counts days from the date that the policy was "made or written" and not from the effective date. He argues that October 23, 1986, is unquestionably the date because *it* is the date of application, the date the premium was paid, and the date the binder was created. He presented this argument to the trial court, and it appears to have merit. However, the trial court did not decide the crucial point or reach the issue because of its holding on the first issue. We should reverse and remand for this purpose.

I would reverse and remand to the trial court to determine the correct date, not assume an incorrect date or a date "not necessarily accurate." We should avoid deciding hypothetical or speculative cases. As the United States Supreme Court said in *Associated Press v. National Labor Relations Bd.*, 301 U.S. 103, 132, 57 S.Ct. 650, 655, 81 L.Ed. 953, 960 (1937): "Courts deal with cases upon the basis of the facts disclosed, never with nonexistent and assumed circumstances." *See also Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725, 1734 (1945) ("It has long been [this Court's] considered practice not to decide abstract, hypothetical or contingent questions....").

---

* Counsel cites *City of Mitchell v. Beauregard,* 430 N.W.2d 704, 706 (S.D.1988), as authority for affirming summary judgment in this situation.

However, his authority is insufficient to support that proposition where, as here, the trial court did not even reach the issue or decide the point.