PETE LIEN & SONS, INC.,
Plaintiff and Appellee,

v.

FIRST AMERICAN TITLE INSURANCE COMPANY, Defendant and Appellant.

Nos. 17437, 17443.

Supreme Court of South Dakota.

Considered on Briefs Oct. 22, 1991.

Decided Dec. 18, 1991.

Rehearing Denied Jan. 9, 1992.

Craig D. Grotenhouse, Rapid City, for plaintiff and appellee.

Craig A. Pfeifle of Lynn, Jackson, Shultz & Lebrun, Rapid City, for defendant and appellant; Gene Lebrun of Lynn, Jackson, Shultz & Lebrun, Rapid City, on brief.

MILLER, Chief Justice.

First American appeals the trial court's grant of summary judgment which extended coverage to Lien for attorney fees under a title insurance policy issued by First American. We reverse.

## FACTS

On November 29, 1976, First American Title Insurance Company (First American) issued Title Insurance Policy No. 1981–SD to Pete Lien & Sons, Inc. (Lien) for property upon which Lien planned to construct a residence.[1]

First American's policy extends coverage to Lien for, among other things, any loss and "costs, attorney's fees and expenses which the company may become obligated to pay hereunder, sustained or incurred by the insured by reason of: (1) title to the estate or interest described in Schedule A being vested otherwise than as stated therein; (2) any defect in or lien or encumbrance on such title; (3) lack of a right of access to and from the land; or (4) unmarketability of such title."

The policy specifically excludes from coverage "[u]npatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water." Furthermore, the policy contains an exception for: "The right to prospect for, mine and remove all the coal and other minerals in the lands described herein, as reserved by the United States of America in Patent recorded May 24, 1922, in Patent Book Q, Page 201."

Because the minerals on the property were subject to prospecting and location rights under the Mining Law of 1872, Lien's lender required additional protection should the property be later mined, thus

---

1. The home was constructed for the use of Charles Lien, the president of Pete Lien & Sons.

resulting in damage to surface improvements. As a result, Lien purchased a special endorsement which is at issue herein. This special endorsement insured against "loss which said insured shall sustain by reason of: Damage to existing improvements, including lawns, shrubbery or trees, resulting from the exercise of any right to use the surface of said land for the extraction or development of minerals...." Sometime thereafter, Lien constructed a residence on this property.

In August, 1987, Bruce R. Nygaard located the unpatented mining claims on this property. He notified Lien in October, 1988, that he had purchased the mining claims and would be filing a permit for a mineral search. Nygaard also, without notifying Lien, applied for and received a license from the South Dakota Department of Water & Natural Resources to mine for construction aggregates.

Lien, upon receiving notice from Nygaard of Nygaard's mining license, provided First American with a copy. Lien asked First American to hire counsel to defeat Nygaard's interests. First American refused, denying coverage, claiming it had no duty to undertake such an action under the policy.

Lien, through private counsel and in-house counsel, successfully commenced an action in circuit court to have Nygaard's mineral claims declared null and void. Lien's action against Nygaard was successful because Nygaard failed to properly comply with statutory requirements [2] when he located his claims.

Thereafter, Lien brought this declaratory action, claiming it should be reimbursed for the costs of both private and in-house counsel fees incurred in the Nygaard action. Cross-motions for summary judgment were submitted. The parties agreed that no genuine issues of material fact existed and that the matter was solely a question of

law. The trial court granted Lien's motion for summary judgment and awarded it private attorney fees in the amount of $14,-070.15 (but denied its request for reimbursement for in-house counsel time). We reverse.

### DECISION

Lien admits that without the special endorsement to the title insurance policy issued by First American, the right of third parties to locate unpatented mining claims and thereafter conduct mining would not be covered. It is also undisputed that Lien suffered no actual loss to the surface estate because Nygaard's mining claim was voided. On appeal, we must determine whether the special endorsement modified the exclusions referred to earlier. Furthermore, we must decide whether actual loss to the surface estate is required to recover attorney fees incurred in the action defeating Nygaard's mining claim.

### 1) *Modification*

■ Lien argues that by including the special endorsement in the policy the parties modified the exclusions and thereby granted Lien coverage to challenge and defeat Nygaard's attempt to exercise mining rights. We disagree.

> Our statutes provide every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application lawfully made a part of the policy.

*Aetna Insurance Company v. Labor*, 85 S.D. 192, 195, 179 N.W.2d 271, 273 (1970) (citing SDCL 58–11–39).

The special endorsement specifically states that the insured loss is *limited* to "damages to existing improvements, including lawns, shrubbery or trees resulting from the exercise of any right to use the

---

2. Nygaard failed to comply with state and federal statutory requirements for placing discovery markers and boundary posts and markers.

There were other deficiencies with his claim, such as failure to discover a valuable mineral.

surface of said land for the extraction or development of minerals...."

Endorsements or riders on a policy become a part of the policy, and must be construed with it. Such provisions in the body of the policy are not to be abrogated, waived, limited, or modified by the provisions of an endorsement or rider unless expressly stated therein that such provisions are substituted for those in the body of the policy, or unless the provisions in the policy proper and in the rider or endorsement are conflicting.

13A J. Appleman Insurance Law and Practice § 7538 (1976).

In this case, the extra protection was purchased at Lien's lender's request in case the property was later subjected to mining. Lien admits that coverage could only be found, if at all, from the special endorsement. The special endorsement contains no express language modifying the policy, and there is no conflict between the policy and the special endorsement. The special endorsement clearly states it was meant to insure against the *potential risk of damage to the surface estate* should someone properly exercise mining rights. As a result, the special endorsement does not modify the exclusions.

### 2) *Actual Loss*

The parties agree that Lien sustained no damage to its property. Despite this fact, the trial court granted Lien's motion for summary judgment based on *Summonte v. First Amer. Title Ins. Co.,* 180 N.J.Super. 605, 436 A.2d 110 (1981), and also awarded Lien $14,070.15 for attorney fees paid.[3] The facts of this case present the novel question of whether the special endorsement to this title insurance policy requires actual damage to the surface estate before a claim against the policy is warranted. We think it does.

■ There is no question that title insurance is generally a contract of indemnity

which "only insures against defects, discrepancies, or other impediments of record affecting title to real estate designated in the policy or interfering with the marketability of title to the land described in the policy." *Heyd v. Chicago Title Ins. Co.,* 218 Neb. 296, 354 N.W.2d 154, 156 (1984); *Sandler v. N.J. Realty Title Ins. Co.,* 36 N.J. 471, 178 A.2d 1, 5 (1962). Thus, title insurance, in accordance with its statutory definition, typically insures against "loss by encumbrance, or defective titles, or invalidity, or adverse claim to title." SDCL 58-9-33.

■ At the time the First American policy was issued, Lien had record title to the surface rights. Both parties were aware that Lien did not own the minerals and that the patent to the land permitted mining claims to be located by third parties. The special endorsement clearly states it is meant to insure against the potential risk of damage to the surface estate should someone properly exercise mining rights. *In fact, if Nygaard had properly followed the procedural requirements, there would be nothing Lien could do except make a claim against its policy for whatever damage was incurred to the surface estate.*

■ Moreover, as a general rule, an insurance contract is to be construed liberally in favor of the insured and strictly against the insurer; however, this rule only applies when the language of the insurance contract is ambiguous. *Tri–State v. Bollinger,* 476 N.W.2d 697 (S.D.1991); *Strong v. State Farm Mutual Insurance Company,* 76 S.D. 367, 369, 78 N.W.2d 828, 829 (1956). Where the policy is unambiguous, its terms are to be construed according to their plain and ordinary meaning. *Id.*

Because Lien incurred no actual damage to the surface estate, which is what the special endorsement insured against, we must reverse the trial court's grant of summary judgment and its award for attorney

---

**3.** This case is clearly distinguishable from *Summonte.* In this case, we are not dealing with a

defect to title, or liens, or encumbrances on the property as was the New Jersey court.

fees for Lien.[4]

Reversed.

WUEST, HENDERSON, SABERS and AMUNDSON, JJ., concur.

---

[4.] Since we deny Lien's claim for private attorney fees, we need not address its notice of review requesting in-house counsel fees.